# UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
### DISTRICT OF KANSAS

TIMOTHY M. O'BRIEN
CLERK OF COURT

204 U.S. COURTHOUSE
401 N. MARKET
WICHITA, KANSAS  67202
(316) 269-6491

259 U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KANSAS  66101
(913) 735-2200

August 19, 2015

490 U.S. COURTHOUSE
444 S.E. QUINCY
TOPEKA, KANSAS  66683
(785) 295-2610

**SEE NOTICE OF ELECTRONIC FILING**

Pro Se Appellant Appeal

RE:     Grace Lee v. Kansas State University, et al.
        District Court Case No: 12-2638 JAR
        Notice of Appeal filed by: Plaintiff, Grace Lee
        Fee Status: PAID

The following documents are for the parties in connection with the Notice of Appeal:
Notice of Appeal, Copy of the Docket Sheet.

Pro Se forms for the appeal can be found at www.ca10.uscourts.gov. If you have any
questions, please contact the office of the Clerk of the U.S. Court of Appeals in Denver,
Colorado at 303.844.3157.

Sincerely,
TIMOTHY M. O'BRIEN
CLERK OF COURT

By: s/K. O'Keefe
    Deputy Clerk

cc: Clerk, U.S. Court of Appeals
        (Notice of Appeal, Docket Sheet & Preliminary Record)

APPEAL,LC3,PROTO,SCHEDCONFSET

# U.S. District Court
# DISTRICT OF KANSAS (Kansas City)
# CIVIL DOCKET FOR CASE #: <u>2:12–cv–02638–JAR–TJJ</u>

Lee v. Kansas State University et al
Assigned to: District Judge Julie A. Robinson
Referred to: Magistrate Judge Teresa J. James
Demand: $75,000
Cause: 42:1983 Civil Rights Act

**Plaintiff**

Date Filed: 09/28/2012
Date Terminated: 07/23/2015
Jury Demand: Both
Nature of Suit: 448 Civil Rights: Education
Jurisdiction: Federal Question

**Grace Lee**
*(Pro Se Filing and Electronic Noticing)*

represented by **Grace Lee**
198 Mount Vernon Street, S1
Malden, MA 02148
785–340–3340
Email: gracelee695@gmail.com
PRO SE
*Bar Number:*
*Bar Status:*

**Austin B. Hayden**
Cohen McNeile & Pappas PC
4601 College Blvd., Suite 200
Leawood, KS 66211
913–491–4050
Fax: 913–491–3059
Email: ahayden@cmplaw.net
*TERMINATED: 09/24/2014*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25258*
*Bar Status: Active*

**Clifford A. Cohen**
Cohen McNeile & Pappas PC
4601 College Blvd., Suite 200
Leawood, KS 66211
913–491–4050
Fax: 913–491–3059
Email: ccohen@cmplaw.net
*TERMINATED: 09/24/2014*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 08681*
*Bar Status: Active*

V.

**Defendant**

**Kansas State University**
*TERMINATED: 06/07/2013*

represented by **M. J. Willoughby**
Office of Attorney General – Kansas
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612–1597
785–296–2215
Fax: 785–291–3767
Email: MJ.Willoughby@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*
*Bar Status: Active*

**Defendant**

**Carol W. Shanklin**
*Dr., in her individual and official
capacities*
*TERMINATED: 08/20/2014*

represented by **M. J. Willoughby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*
*Bar Status: Active*

**Defendant**

**James A. Guikema**
*Dr., in his individual and official
capacities*

represented by **M. J. Willoughby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*
*Bar Status: Active*

**Defendant**

**Duane W. Crawford**
*Dr., in his individual and official
capacities*
*TERMINATED: 08/20/2014*

represented by **M. J. Willoughby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*
*Bar Status: Active*

**Defendant**

**James W. Neill**
*Dr., in his individual and official
capacities*

represented by **M. J. Willoughby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*
*Bar Status: Active*

**Defendant**

**Haiyan Wang**
*Dr., in her individual and official
capacities*
*TERMINATED: 08/20/2014*

represented by **M. J. Willoughby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*

*Bar Status: Active*

**Defendant**

| | |
|---|---|
| **Heather M. Reed** | represented by **M. J. Willoughby** |
| *in her individual and official capacities* | (See above for address) |
| *TERMINATED: 08/20/2014* | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |
| | Bar Number: 14059 |
| | *Bar Status: Active* |

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/28/2012 | 1 | | COMPLAINT (Summons Issued) with trial location of Kansas City, filed by Grace Lee.(ta) (Entered: 09/28/2012) |
| 09/28/2012 | 2 | | CIVIL COVER SHEET re: 1 Complaint by Plaintiff Grace Lee. (ta) (Entered: 09/28/2012) |
| 09/28/2012 | | | SUMMONS ISSUED as to Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang. Summons emailed to Attorney for service. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ta) (Entered: 09/28/2012) |
| 09/28/2012 | | | FILING FEE PAID: in the amount of $350.00, receipt number K4631035335. (ta) (Entered: 09/28/2012) |
| 10/19/2012 | 3 | | CLERKS ORDER EXTENDING TIME until 11/07/2012 for Defendant Kansas State University to answer or otherwise plead. Signed by deputy clerk on 10/19/2012. (ta) (Entered: 10/19/2012) |
| 10/19/2012 | 4 | | CLERKS ORDER EXTENDING TIME until 11/06/2012 for Defendants James A. Guikema, Duane W. Crawford, Haiyan Wang, James W. Neill, Heather M. Reed, Carol W. Shanklin to answer or otherwise plead. Signed by deputy clerk on 10/19/2012. (ta) (Entered: 10/19/2012) |
| 10/24/2012 | 5 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon Kansas State University served on 10/5/2012, answer due 11/7/2012. (Hayden, Austin) (Entered: 10/24/2012) |
| 10/24/2012 | 6 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon Duane W. Crawford served on 10/2/2012, answer due 11/6/2012. (Hayden, Austin) (Entered: 10/24/2012) |
| 10/24/2012 | 7 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon James A. Guikema served on 10/2/2012, answer due 11/6/2012. (Hayden, Austin) (Entered: 10/24/2012) |
| 10/24/2012 | 8 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon James W. Neill served on 10/2/2012, answer due 11/6/2012. (Hayden, Austin) (Entered: 10/24/2012) |

| 10/24/2012 | 9 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon Heather M. Reed served on 10/2/2012, answer due 11/6/2012. (Hayden, Austin) (Entered: 10/24/2012) |
|---|---|---|---|
| 10/24/2012 | 10 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon Haiyan Wang served on 10/2/2012, answer due 11/6/2012. (Hayden, Austin) (Entered: 10/24/2012) |
| 10/25/2012 | 11 | | SUMMONS RETURNED EXECUTED –– Certified Mail by Grace Lee upon Carol W. Shanklin served on 10/2/2012, answer due 11/6/2012. (Hayden, Austin) (Entered: 10/25/2012) |
| 11/06/2012 | 12 | | MOTION to Dismiss by Defendants Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang. (Willoughby, M.) (Entered: 11/06/2012) |
| 11/06/2012 | 13 | | MEMORANDUM IN SUPPORT of 12 MOTION to Dismiss by Defendants Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang. (Willoughby, M.) (Entered: 11/06/2012) |
| 11/07/2012 | 14 | | MOTION to Stay Discovery by Defendants Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang. (Willoughby, M.) (Entered: 11/07/2012) |
| 11/07/2012 | 15 | | MEMORANDUM IN SUPPORT of 14 MOTION to Stay Discovery by Defendants Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang. (Willoughby, M) (Entered: 11/07/2012) |
| 11/14/2012 | 16 | | Unopposed MOTION for Extension of Time to File Response as to 12 MOTION to Dismiss , 13 Memorandum in Support of Motion by Plaintiff Grace Lee(Hayden, Austin) (Entered: 11/14/2012) |
| 11/15/2012 | 17 | | ORDER granting 16 Agreed Motion for Extension of Time to File Response to 12 MOTION to Dismiss. Response deadline is extended to 12/11/2012. Signed by District Judge Julie A. Robinson on 11/15/2012. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (gc) (Entered: 11/15/2012) |
| 12/07/2012 | 18 | | MEMORANDUM AND ORDER granting 14 Motion to Stay Discovery. Signed by Magistrate Judge David J. Waxse on 12/7/2012. (aam) (Entered: 12/07/2012) |
| 12/11/2012 | 19 | | RESPONSE by Plaintiff Grace Lee re: 12 MOTION to Dismiss. (Hayden, Austin) (Entered: 12/11/2012) |
| 12/26/2012 | 20 | | REPLY to Response to Motion by Defendants Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang re: 12 MOTION to Dismiss. (Willoughby, M.) (Entered: 12/26/2012) |
| 06/07/2013 | 21 | | MEMORANDUM AND ORDER granting in part and denying in part 12 Motion to Dismiss. Motion is granted with respect to counts 2–10 and with respect to all claims against KSU and against other defendants in their official capacities. Granting in part and denying in part with respect to count 1. Signed |

| | | | |
|---|---|---|---|
| | | | by District Judge Julie A. Robinson on 6/7/2013. (mb) (Entered: 06/07/2013) |
| 06/20/2013 | 22 | | MOTION for Extension of Time to File Answer by Defendants Duane W. Crawford, James A. Guikema, James W. Neill, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang. (Willoughby, M.) (Entered: 06/20/2013) |
| 06/20/2013 | 23 | | ORDER granting 22 Agreed Motion for Extension of Time. Defendants Duane W. Crawford, James A. Guikema, James W. Neill, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang are hereby granted a 19–day extension of time, up to and including 7/10/2013, in which to file an answer or otherwise respond to Plaintiff's 1 Complaint. Signed by Magistrate Judge David J. Waxse on 6/20/2013. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (do) (Entered: 06/20/2013) |
| 07/10/2013 | 24 | | ANSWER to 1 Complaint by Duane W. Crawford, James A. Guikema, James W. Neill, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Willoughby, M.) (Entered: 07/10/2013) |
| 08/08/2013 | 25 | | ORDER SETTING SCHEDULING CONFERENCE: Telephone Scheduling Conference set for 9/20/2013 at 04:00 PM before Magistrate Judge David J. Waxse. Report of Parties Planning Meeting deadline 9/13/2013. Signed by Magistrate Judge David J. Waxse on 8/8/2013. (ll) (Entered: 08/08/2013) |
| 09/20/2013 | | | MINUTE ENTRY for Telephone Scheduling Conference held before Magistrate Judge David J. Waxse on 9/20/2013. Written Scheduling Order to follow. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ll) (Entered: 09/23/2013) |
| 09/27/2013 | 26 | | SCHEDULING ORDER: Mediation deadline 11/20/2013. Discovery on immunity issues deadline 2/20/2014. SEE SCHEDULING ORDER FOR ADDITIONAL DEADLINES. Signed by Magistrate Judge David J. Waxse on 9/27/2013.(ll) (Entered: 09/27/2013) |
| 11/15/2013 | 27 | | ADR REPORT by Duane W. Crawford, James A. Guikema, James W. Neill, Heather M. Reed, Carol W. Shanklin, Haiyan Wang. ADR session held on: 11/11/2013 and conducted by John Bukaty, Jr.. Results of ADR: Case did not settle. Status of litigation at time of ADR: Other(Willoughby, M.) (Entered: 11/15/2013) |
| 12/02/2013 | 28 | | MOTION for extension of time *to file motion for protective order* by Defendants Duane W. Crawford, James A. Guikema, Kansas State University, James W. Neill, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang. (Willoughby, M.) (Entered: 12/02/2013) |
| 12/03/2013 | 29 | | RESPONSE by Plaintiff Grace Lee re 28 MOTION for extension of time *to file motion for protective order.* (Hayden, Austin) (Entered: 12/03/2013) |
| 12/09/2013 | 30 | | MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed by Defendants Duane W. Crawford, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang. (Willoughby, M.) (Entered: 12/09/2013) |
| 12/09/2013 | 31 | | MEMORANDUM IN SUPPORT of 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed by Defendants Duane W. Crawford, Heather M. Reed, Carol W. Shanklin, Haiyan Wang(Willoughby, M.) (Entered: 12/09/2013) |

| 12/09/2013 | 32 | | MOTION to Stay Discovery re 26 Scheduling Order, 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed by Defendants Duane W. Crawford, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang. (Willoughby, M.) (Entered: 12/09/2013) |
|---|---|---|---|
| 12/09/2013 | 33 | | MEMORANDUM IN SUPPORT of 32 MOTION to Stay Discovery re 26 Scheduling Order, 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed by Defendants Duane W. Crawford, Heather M. Reed, Carol W. Shanklin, and Haiyan Wang. (Willoughby, M.) (Entered: 12/09/2013) |
| 12/09/2013 | 34 | | MOTION for Protective Order by Defendants James A. Guikema and James W. Neill. (Attachments: # 1 Protective Order)(Willoughby, M.) (Entered: 12/09/2013) |
| 12/09/2013 | 35 | | MEMORANDUM IN SUPPORT of 34 MOTION for Protective Order by Defendants James A. Guikema and James W. Neill. (Willoughby, M.) (Entered: 12/09/2013) |
| 12/11/2013 | 36 | | ORDER granting 28 Motion for Extension of Time as unopposed and for good cause shown. Defendants are hereby granted a 7–day extension of time, up to and including 12/9/2013, in which to file a motion for a protective order. Signed by Magistrate Judge David J. Waxse on 12/11/2013. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (do) (Entered: 12/11/2013) |
| 12/13/2013 | 37 | | RESPONSE by Plaintiff Grace Lee re: 32 MOTION to Stay Discovery re: 26 Scheduling Order and 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed. (Hayden, Austin) (Entered: 12/13/2013) |
| 12/20/2013 | 38 | | CERTIFICATE OF SERVICE of Rule 26(a) Disclosures by Grace Lee. (Hayden, Austin) (Entered: 12/20/2013) |
| 12/20/2013 | 39 | | RESPONSE by Plaintiff Grace Lee re 34 MOTION for Protective Order (Attachments: # 1 Protective Order Proposed Protective Order)(Hayden, Austin) (Entered: 12/20/2013) |
| 12/20/2013 | 40 | | NOTICE OF SERVICE by James A. Guikema and James W. Neill of Initial Disclosures. (Willoughby, M.) (Entered: 12/20/2013) |
| 12/23/2013 | 41 | | REPLY to Response to Motion by Defendants Duane W. Crawford, Heather M. Reed, Carol W. Shanklin, Haiyan Wang re: 32 MOTION to Stay Discovery re 26 Scheduling Order, 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed (Willoughby, M.) (Entered: 12/23/2013) |
| 12/30/2013 | 42 | | RESPONSE by Plaintiff Grace Lee re 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed. (Hayden, Austin) (Entered: 12/30/2013) |
| 01/03/2014 | 43 | | REPLY to Response to Motion by Defendants James A. Guikema and James W. Neill re: 34 MOTION for Protective Order. (Willoughby, M.) (Entered: 01/03/2014) |
| 01/13/2014 | 44 | | REPLY to Response to Motion by Defendants Duane W. Crawford, Heather M. Reed, Carol W. Shanklin, Haiyan Wang re: 30 MOTION to Dismiss Party Shanklin, Crawford, Wang and Reed. (Willoughby, M.) (Entered: 01/13/2014) |
| 01/17/2014 | 45 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF SERVICE by James A. Guikema, James W. Neill of Discovery *Requests* (Willoughby, M.) (Entered: 01/17/2014) |
| 01/20/2014 | 46 | | CERTIFICATE OF SERVICE of Plaintiff's First Discovery Requests by Grace Lee. (Hayden, Austin) (Entered: 01/20/2014) |
| 01/23/2014 | 47 | | ORDER REASSIGNING CASE. Case reassigned to Magistrate Judge Teresa J. James for all further pretrial proceedings. Magistrate Judge David J. Waxse no longer assigned to case. Signed by deputy clerk on 1/23/2014. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (do) (Entered: 01/23/2014) |
| 01/27/2014 | 48 | | AMENDED CERTIFICATE OF SERVICE of Discovery Requests by Grace Lee. (Hayden, Austin) (Entered: 01/27/2014) |
| 01/28/2014 | 49 | | EXHIBITS IN SUPPORT of 34 MOTION for Protective Order by Defendants James A. Guikema and James W. Neill. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit) (Willoughby, M.) (Entered: 01/28/2014) |
| 02/18/2014 | 50 | | CERTIFICATE OF SERVICE of Discovery Responses by Grace Lee re 45 Notice of Service. (Hayden, Austin) (Entered: 02/18/2014) |
| 02/24/2014 | 51 | | NOTICE OF SERVICE by James A. Guikema, James W. Neill of Responses to Plaintiff's First Requests for Admission (Willoughby, M.) (Entered: 02/24/2014) |
| 02/24/2014 | 52 | | MOTION for extension of time by Defendants James A. Guikema, James W. Neill(Willoughby, M.) (Entered: 02/24/2014) |
| 02/25/2014 | 53 | | ORDER granting 52 Motion for Extension of Time pursuant to D. Kan. Rule 26.2(a). Defendants Dr. James A. Guikema and Dr. James W. Neill are hereby granted an extension of time until ten (10) days after the Court's decision on 34 Motion for Protective Order in which to respond to Plaintiff's First Request for Production of Documents and Plaintiff's Interrogatories. Signed by Magistrate Judge Teresa J. James on 2/25/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (do) (Entered: 02/25/2014) |
| 03/14/2014 | 54 | | MEMORANDUM AND ORDER granting 32 Motion to Stay Discovery. All discovery is hereby stayed as to Defendants Dr. Carol W. Shanklin, Dr. Duane W. Crawford, Dr. Haiyan Wang, and Heather M. Reed until such time as the Court rules on 30 Motion to Dismiss. Signed by Magistrate Judge Teresa J. James on 3/14/2014. (do) (Entered: 03/14/2014) |
| 03/14/2014 | 55 | | MEMORANDUM AND ORDER granting in part and denying in part 34 Motion for Protective Order. See Order for further details. Signed by Magistrate Judge Teresa J. James on 3/14/2014. (do) (Entered: 03/14/2014) |
| 03/24/2014 | 56 | | NOTICE OF SERVICE by James A. Guikema, James W. Neill of Discovery Responses (Willoughby, M.) (Entered: 03/24/2014) |
| 03/28/2014 | 57 | | PROTECTIVE ORDER entered to protect the confidentiality of specified categories of documents and information produced or disclosed in this litigation. See Protective Order for more details. Signed by Magistrate Judge Teresa J. James on 03/28/2014. (bw) (Entered: 03/28/2014) |

| 08/20/2014 | 58 | | MEMORANDUM AND ORDER granting 30 Motion to Dismiss Party. IT IS FURTHER ORDERED BY THE COURT that the stay of discovery and other Rule 26 activities shall be LIFTED. Signed by District Judge Julie A. Robinson on 8/20/14. (hw) (Entered: 08/21/2014) |
| 09/04/2014 | 59 | | ORDER SETTING SCHEDULING CONFERENCE: Scheduling Conference set for 10/29/2014 at 02:00 PM by Telephone before Magistrate Judge Teresa J. James. COUNSEL WHO PLAN TO PARTICIPATE MUST CALL 913–735–2279 FOR THE CONFERENCE. Report of Parties Planning Meeting and Rule 26 Initial Disclosure Deadline set for 10/22/2014. Signed by Magistrate Judge Teresa J. James on 9/4/14. (ll) (Entered: 09/04/2014) |
| 09/05/2014 | 60 | | MOTION to Withdraw as Attorney by Plaintiff Grace Lee (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Cohen, Clifford) (Entered: 09/05/2014) |
| 09/24/2014 | 61 | | MEMORANDUM AND ORDER granting 60 Motion to Withdraw as Plaintiff's Attorney. Attorneys Clifford A. Cohen and Austin B. Hayden are authorized to withdraw as counsel for Plaintiff Grace Lee in this case. All further service upon Grace Lee shall be sent to 198 Mount Vernon Street, Apt. S1, Malden MA 02148. Signed by Magistrate Judge Teresa J. James on 09/24/2014.Mailed to pro se party Grace Lee by regular mail. (ts) (Entered: 09/24/2014) |
| 09/25/2014 | 62 | | ORDER CONVERTING SCHEDULING CONFERENCE TO TELEPHONE STATUS CONFERENCE: In response to Defendants' unopposed request, the Scheduling Conference set for 10/29/2014 at 2:00 PM before Magistrate Judge Teresa J. James, is hereby converted to a Telephone Status Conference to discuss the status of Plaintiff's representation and other scheduling issues. Plaintiff is directed to retain new counsel who shall promptly file an entry of appearance and be ready to participate in the Telephone Status Conference. The Report of Parties Planning Meeting requirement and Rule 26 Initial Disclosure Deadline are continued pending further order of the Court. However, at the Status Conference counsel should be prepared to discuss the remaining deadlines and any other scheduling issues in the case. If Plaintiff has not retained counsel by 10/29/2014, Plaintiff shall participate in the Telephone Status Conference. Counsel (and Plaintiff, if new counsel has not yet entered an appearance on her behalf) shall dial–in to 913–735–2279 for the conference call. Please do not call more than five minutes prior to the scheduled time. The deadline for the parties to submit their proposed Pretrial Order is continued pending further order of the Court. Signed by Magistrate Judge Teresa J. James on 09/25/2014.Mailed to pro se party Grace Lee by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ts) (Entered: 09/25/2014) |
| 10/29/2014 | 63 | | MINUTE ENTRY for Status Conference held on 10/29/2014 before Magistrate Judge Teresa J. James. Plaintiff appeared in person, pro se. Defendants James W. Neill and James A. Guikema appeared through counsel, M.J. Willoughby. The Court inquired whether Plaintiff Grace Lee intends to retain counsel, and Plaintiff indicated that she intends to proceed pro se. After conferring with the parties, the Court set the following deadlines. Upon agreement of the parties, discovery is closed. No later than 11/13/2014, counsel for Defendant shall submit the parties' agreed–upon proposed Pretrial Order by e–mail attachment to KSD_James_chambers@ksd.uscourts.gov. The Final Pretrial Conference |

| | | |
|---|---|---|
| | | will be held by telephone on 11/20/2014 at 01:30 PM Central Time before Magistrate Judge Teresa J. James. COUNSEL WHO PLAN TO PARTICIPATE AND PRO SE PLAINTIFF MUST CALL 913–735–2279 for the conference. Please do not call more than five minutes prior to the scheduled time. The deadline for filing dispositive motions is 12/5/2014. The trial date will be set at a later time. (Court Reporter None.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ts) (Entered: 10/29/2014) |
| 10/29/2014 | | NOTICE Re: Pro Se Mailing. Document 63 Minute Entry from Status Conference mailed to Grace Lee on 10/29/2014 by regular mail. (ts) (Entered: 10/29/2014) |
| 10/30/2014 | 64 | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Parties are notified that this proceeding will be recorded under the Cameras in Courts pilot unless one or more parties objects. To object to recording, complete the form provided at this link (http://www.ksd.uscourts.gov/cameras–in–courts/) and return it to ksd_robinson_chambers@ksd.uscourts.gov at least five days prior to the proceeding unless otherwise ordered by the judge. Jury Trial set for 8/3/2015 at 09:00 AM in Courtroom 427 (JAR) before District Judge Julie A. Robinson. (ts) (Entered: 10/30/2014) |
| 10/30/2014 | | DOCKET ANNOTATION: Plaintiff Grace Lee is a registered pro se participant who will receive electronic notification, and who has been issued an ECF login and password for electronic filing. (mg) (Entered: 10/30/2014) |
| 11/18/2014 | 65 | MOTION to Continue Final Pretrial Conference by Defendants James A. Guikema, James W. Neill (Attachments: # 1 Exhibit Exhibit 1)(Willoughby, M.) (Entered: 11/18/2014) |
| 11/19/2014 | 66 | ORDER granting 65 Defendants' Motion to Continue Final Pretrial Conference. For good cause shown, the Final Pretrial Conference, currently set on 11/20/2014, is hereby canceled. Plaintiff has indicated her desire to have the Final Pretrial Conference proceed as scheduled. The Court has concluded, however, that the case is not ready for Final Pretrial Conference. During the 10/29/2014 Status Conference, the parties represented that discovery is closed, but Defendants' motion and the parties' email correspondence with the Court reveals that only discovery related to Defendants' qualified immunity defense is concluded. Defendants' counsel and pro se Plaintiff agree that further discovery will be necessary if the summary judgment motion Defendants intend to file does not dispose of the case. Although they do not agree on the scope of such discovery, the Court need not address that issue unless and until it arises. Accordingly, the Court cancels the Final Pretrial Conference and will re–set it (along with a new deadline for the parties to submit a proposed Pretrial Order), or will set another Status/Scheduling Conference if appropriate following the presiding District Judge's ruling on the summary judgment motion Defendants will file. The deadline for the parties to file dispositive motions is not amended by this Order. Signed by Magistrate Judge Teresa J. James on 11/19/2014. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ts) (Entered: 11/19/2014) |
| 12/05/2014 | 67 | |

| | | | |
|---|---|---|---|
| | | | MOTION for Summary Judgment by Defendants James A. Guikema, James W. Neill (Willoughby, M.) (Entered: 12/05/2014) |
| 12/05/2014 | 68 | | MEMORANDUM IN SUPPORT of 67 MOTION for Summary Judgment by Defendants James A. Guikema, James W. Neill (Attachments: # 1 Exhibit Exhibit 1 Shanklin Declaration, # 2 Exhibit Exhibit 1A, # 3 Exhibit Exhibit 1B, # 4 Exhibit Exhibit 1C, # 5 Exhibit Exhibit 1D, # 6 Exhibit Exhibit 2 Neill Declaration, # 7 Exhibit Exhibit 2A, # 8 Exhibit Exhibit 2B, # 9 Exhibit Exhibit 2C, # 10 Exhibit Exhibit 2D, # 11 Exhibit Exhibit 2E, # 12 Exhibit Exhibit 2F, # 13 Exhibit Exhibit 3 Higgins Declaration, # 14 Exhibit Exhibit 3A, # 15 Exhibit Exhibit 4 Guikema Declaration, # 16 Exhibit Exhibit 4A, # 17 Exhibit Exhibit 4B, # 18 Exhibit Exhibit 4C, # 19 Exhibit Exhibit 4D, # 20 Exhibit Exhibit 5 Defendants' First Request for Admissions, # 21 Exhibit Exhibit 6 Aistrup Declaration, # 22 Exhibit Exhibit 6A)(Willoughby, M.) (Entered: 12/05/2014) |
| 12/24/2014 | 69 | | Unopposed MOTION for Extension of Time to File motion for extension of time to respond to motion for summary judgment as to 67 MOTION for Summary Judgment , 68 Memorandum in Support of Motion,,,, by Plaintiff Grace Lee (Lee, Grace) Modified to remove referral text on 12/30/2014 (hw). (Entered: 12/24/2014) |
| 01/02/2015 | 70 | | ORDER granting 69 Plaintiff's Unopposed Motion for Extension of Time to File Response/Reply re 67 Defendants' MOTION for Summary Judgment. Response deadline is extended to 1/9/2015. Signed by District Judge Julie A. Robinson on 1/2/2015. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (gc) (Entered: 01/02/2015) |
| 01/09/2015 | 71 | | RESPONSE by Plaintiff Grace Lee re 67 MOTION for Summary Judgment (Lee, Grace) (Entered: 01/09/2015) |
| 01/09/2015 | 72 | | MEMORANDUM IN OPPOSITION by Plaintiff Grace Lee re 67 MOTION for Summary Judgment (Attachments: # 1 Exhibit Index Index, # 2 Exhibit 1–10, # 3 Exhibit 11–20, # 4 Exhibit 21–30, # 5 Exhibit 31–40, # 6 Exhibit 41–50, # 7 Exhibit 51–65)(Lee, Grace) (Entered: 01/09/2015) |
| 01/09/2015 | 73 | | AFFIDAVIT of Plaintiff Grace Lee re 72 Memorandum in Opposition to Motion, by Grace Lee. (Attachments: # 1 Exhibit Plaintiff's Declaration Exhibits A – D)(Lee, Grace) (Entered: 01/09/2015) |
| 01/22/2015 | 74 | | Unopposed MOTION for Extension of Time to File Reply as to 71 Response to Motion by Defendants James A. Guikema, James W. Neill (Willoughby, M.) Modified to remove referal text on 1/23/2015 (sv). (Entered: 01/22/2015) |
| 01/23/2015 | 75 | | ORDER granting 74 Defendants' Unopposed Motion for Extension of Time to File Reply re 67 MOTION for Summary Judgment. Reply deadline is extended to 2/6/2015. Signed by District Judge Julie A. Robinson on January 23, 2015. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (gc) (Entered: 01/23/2015) |
| 02/06/2015 | 76 | | REPLY to Response to Motion by Defendants James A. Guikema, James W. Neill re: 67 MOTION for Summary Judgment (Attachments: # 1 Declaration Gary Gadbury, # 2 Declaration Weixing Song, # 3 Declaration Heather Reed)(Willoughby, M.) (Entered: 02/06/2015) |

| 02/19/2015 | 77 | | MOTION FOR TO LEAVE TO FILE SURREPLY by Plaintiff Grace Lee Re: 67 MOTION for Summary Judgment (Attachments: # 1 Surreply Memorandum, # 2 Declaration Second Declaration of Grace Lee, # 3 Exhibit Plaintiff's Exhibit 66)(Lee, Grace) Modified to change the filing event on 7/9/2015 (sv). (Entered: 02/19/2015) |
|---|---|---|---|
| 02/27/2015 | 78 | | MOTION to Strike 77 Surreply *(and Response in Opposition to Motion for Leave to File Surreply)* by Defendants James A. Guikema, James W. Neill (Willoughby, M.) Modified on 3/2/2015 to remove referral text (sv). (Entered: 02/27/2015) |
| 03/06/2015 | 79 | | RESPONSE by Plaintiff Grace Lee re 78 MOTION to Strike 77 Surreply *(and Response in Opposition to Motion for Leave to File Surreply)* (Lee, Grace) (Entered: 03/06/2015) |
| 07/09/2015 | | | DOCKET ANNOTATION: At the direction of chambers, the filing event for 77 has been changed to a motion. (sv) (Entered: 07/09/2015) |
| 07/15/2015 | 80 | | ORDER. On its own motion, the Court vacates the trial date scheduled for August 3, 2015, subject to later reinstatement if the currently pending summary judgment motion is denied. If summary judgment is denied, the matter will be set for a status conference to discuss new pretrial deadlines and a new trial date. Signed by District Judge Julie A. Robinson on 7/15/2015. Mailed to pro se party Grace Lee by certified mail (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.)(as) (Entered: 07/15/2015) |
| 07/23/2015 | 81 | | MEMORANDUM AND ORDER granting 67 Motion for Summary Judgment; granting 77 Motion for Leave to File; denying 78 Motion to Strike. Signed by District Judge Julie A. Robinson on 7/23/15. (hw) (Entered: 07/23/2015) |
| 07/23/2015 | 82 | | JUDGMENT in favor of James A. Guikema, James W. Neill against Grace Lee. Signed by District Judge Julie A. Robinson on 7/23/15. (hw) (Entered: 07/23/2015) |
| 08/18/2015 | 83 | | NOTICE OF APPEAL by Plaintiff Grace Lee. Filing fee $ 505, Internet Payment Receipt Number KSDC–3509086. (Lee, Grace) (Entered: 08/18/2015) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GRACE LEE,

                Plaintiff,

                v.

DR. CAROL W. SHANKLIN, et al.,

                Defendants.

Case No. 12-cv-2638-JAR

## MEMORANDUM AND ORDER

Plaintiff Grace Lee filed a complaint against Kansas State University ("KSU"), Dr. Carol W. Shanklin, Dr. James A. Guikema, Dr. Duane W. Crawford, Dr. James W. Neill, Dr. Haiyan Wang, and Ms. Heather Reed ("Defendants"), seeking damages related to her termination from a graduate teaching assistant position and from her graduate studies in statistics at KSU.  The Court previously dismissed all claims against KSU, all claims against Defendants in their official capacities, Counts II through X against Defendants in their individual capacities, and the procedural due process claim in Count I against Defendants Shanklin, Crawford, Wang, and Reed in their individual capacities.  The only remaining claim in this case is Plaintiff's procedural due process claim in Count I against Defendants Guikema and Neill ("Movants") in their individual capacities.

Before the Court are Defendants' Motion for Summary Judgment (Doc. 67), Plaintiff's Motion for Leave to File a Surreply Memorandum in Opposition To Defendants' Motion for Summary Judgment (Doc. 77), and Defendants' Motion to Strike Surreply (Doc. 78). Defendants argue they are protected by qualified immunity.  Movants also argue that even if they are not protected by qualified immunity there is no genuine dispute as to any material fact, and

Movants are entitled to judgment as a matter of law on Count I. The motion is fully briefed, and the Court is prepared to rule. For the reasons set forth below, the Motion for Summary Judgment is granted. Plaintiff's Motion for Leave to File a Surreply is granted and Movants' Motion to Strike is denied.

## I.      Standards for Summary Judgment on Qualified Immunity

Defendants move for summary judgment on Plaintiff's procedural due process claim in Count I, on the basis that they are protected by qualified immunity and are thus entitled to judgment as a matter of law. Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."[1] Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[2]

As the Tenth Circuit explained in *Rojas v. Anderson*,[3] "because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the qualified immunity defense triggers a modified summary judgment standard.[4] The initial burden rests on the plaintiff, rather than the defendant; and the plaintiff must first "clear two hurdles:" (1) demonstrate that the defendant violated her constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the

---

[1]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[2]*Malley v. Briggs*, 475 U.S. 335, 341 & 343 (1986).

[3]727 F.3d 1000, 1003 (10th Cir.2013).

[4]*Id.*

2

alleged unlawful activity.[5]  The court may decide the appropriate order to consider these issues.[6]

Only if the plaintiff clears these hurdles does the burden shift back to the movant defendant to

make the traditional showing that there are no genuine issues of material fact and that he is

entitled to judgment as a matter of law.[7]

    In determining whether the plaintiff has demonstrated a violation of her constitutional or

statutory rights and that the right was clearly established at the time, the court must view the

facts and draw reasonable inferences in the light most favorable to the party opposing summary

judgment.  In *Scott v. Harris,*[8] the Supreme Court held that "[T]his usually means adopting . . .

the plaintiff's version of the facts," unless that version "is so utterly discredited by the record

that no reasonable jury could have believed him."[9]  In *Scott*, the plaintiff's version of the facts

was discredited by a videotape that completely contradicted plaintiff.  Thus, although the court

should generally accept the non-movant plaintiff's version of the facts and draw reasonable

inferences in the light most favorable to the plaintiff, the Court need not accept alleged facts that

are contradicted or discredited by the record.  Moreover, citing to the *Scott* decision, the Tenth

Circuit has held that "because at summary judgment we are beyond the pleading phase of the

litigation, a plaintiff's version of the facts must find support in the record . . ."[10]  In that sense,

---

[5]*Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir.2009)(citing *Pearson v. Callahan*, 129 S.Ct. 808, 815–16 (2009)).

[6]*Camreta v. Greene*, 131 S. Ct. 2020, 2031–32 (2011).

[7]*Rojas v. Anderson*, 727 F.3d 1003–04 (10th Cir.2013).

[8]550 U.S. 372 (2007).

[9]*Id.* at 378–80.

[10]*Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009) (internal quotations and citations omitted).

3

the court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts and reasonable inferences therefrom, in the light most favorable to plaintiff.

Because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[11] However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[12] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[13]

Plaintiff filed but failed to correctly docket a sur-reply[14] to Movants' Motion for Summary Judgment. Movants oppose Plaintiff's attempt to file a sur-reply on that basis as well as that Plaintiff's motion fails to show a sur-reply is warranted. The Court is mindful of the effort expended by Movants in attempting to synthesize the factual averments in their reply brief. The Court also believes Plaintiff had a fair opportunity to litigate the factual clarifications Movants made in their Reply brief. However, given Plaintiff's status as a *pro se* litigant, the Court must construe Plaintiff's filings more liberally than those of a licensed attorney. Given these facts, the Court will consider Plaintiff's sur-reply brief, despite her failure to clearly demonstrate that a sur-reply brief is appropriate in this case.

---

[11]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[12]*Id.*

[13]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[14]Doc. 77.

4

## II.    Uncontroverted Facts and Factual Allegations by Plaintiff that are Supported by the Record

The Court deems uncontroverted, those facts that are supported by the record to which Plaintiff either stipulates, or fails to respond or otherwise properly controvert with reference to record evidence.  Consistent with the standards discussed above, the Court accepts Plaintiff's factual allegations to the extent they are properly supported by the record.  Many of Plaintiff's additional facts in her response to the motion for summary judgment are not properly supported by the record, are based on inadmissible hearsay, or are conclusory statements.  These additional facts the Court disregards.   Also, the Court does not accept factual allegations that are so utterly discredited by the record that no reasonable jury could believe them.  Nor does the Court accept Plaintiff's attempt to controvert admissions she made in response to defendants' request for admissions.  Finally, the Court views these uncontroverted and stipulated facts in the light most favorable to Plaintiff and draws all reasonable inferences in the light most favorable to Plaintiff.

In 2006,  Plaintiff Grace Lee was admitted into the KSU graduate program in statistics. She received a letter informing her of the Graduate School's requirement that graduate students are responsible for diligent pursuit and timely completion of all responsibilities associated with progress toward a degree.  The letter also contained a citation to the website containing the Graduate Handbook and other Graduate School documents and asked that she review these materials.  Plaintiff received and had access to a copy of both the Graduate School Handbook and the Statistics Department Handbook.  The Graduate Handbook states, and Plaintiff was aware,  that graduate students, including those in the Statistics Department who fail to make satisfactory progress, will lose departmental support and will be recommended for academic dismissal from the Graduate School.

The Statistics Department Handbook states that each student seeking a Ph.D. must conduct dissertation research under a major professor. A dissertation must make an original contribution to knowledge in the student's chosen field. The major professor often helps the student with the idea or refining the idea for the dissertation research topic, which is related to the major professor's areas of research.[15] Serving as a major professor is a substantial commitment of time and expertise, which is reflected in the Statistics Department policy that the dissertation topic remains with the major professor if the student fails to make sufficient progress.[16] General oversight is conducted by a supervisory committee that is chaired by the major professor.

The Statistics Department Handbook further provides that students are expected to make adequate progress in the program—in most cases, two years to complete the masters degree and four years beyond that masters degree to complete the Ph.D. The Statistics Department Handbook also provides that the student's preliminary examination should be taken within five semesters, excluding summers, of passing the qualifying examination. But these are not hard deadlines.

The Statistics Department Handbook also states that ". . . at the discretion of the major professor and/or supervisory committee, if sufficient progress is not being made on a degree research topic then the student must relinquish the research topic for degree purposes." In the Statistics Department, student progress is annually reviewed by the Student Progress Committee;

---

[15]Plaintiff does not controvert this general statement; rather, she argues that Dr. Wang did not perform these duties of a major professor.

[16]The Court accepts the Dean of the Graduate School, Dr. Carol Shanklin's declaration on this point. Plaintiff merely "objects" to the statement, without pointing to reason or record evidence controverting it.

and the Graduate Student Progress Committee of the Graduate School makes a list every semester of students it determines are not making satisfactory progress toward completion of a degree.

Plaintiff and her major professor, Dr. Haiyan Wang, had a difficult relationship. Dr. Wang served as Plaintiff's sole major professor until Plaintiff filed a grievance alleging that Dr. Wang had fallen short of her duties as a major professor, and exhibited unprofessional and abusive conduct towards Plaintiff. The grievance was resolved by Dr. James Neill, the head of the Statistics Department, agreeing to serve with Dr. Wang as a co-major professor to Plaintiff, so Plaintiff could continue her dissertation work with Dr. Wang.

Then, on March 18, 2012, Plaintiff filed a second grievance seeking to remove Dr. Wang as her major professor. Students are permitted to change their major professor. It is the policy of the Graduate School that students are responsible for finding a major professor who is willing to oversee their work in an area of mutual research interest; it is not the policy of the Graduate School to assign major professors to students.[17] The Graduate School approved Plaintiff's grievance, and on April 4, Plaintiff signed a Program/Committee Change Form removing Dr. Wang and Dr. Neill as Plaintiff's major professors. Plaintiff did not notice that Dr. Neill's name had been removed from the form and did not realize that by signing the form, she in effect had no major professor. But Dr. Neill, who works in a different area of statistics, told Plaintiff that

---

[17]Plaintiff attempts to controvert this statement of Dr. Carol Shanklin, Dean of the Graduate School, who states that she has personal knowledge of its policies and procedures. Plaintiff merely objects that this statement is vague and without foundation, but points to no admissible evidence that controverts that this is the policy of the Graduate School. Instead, Plaintiff cites to an inadmissible hearsay statement purportedly made by Dr. Shanklin in a September 21, 2011 meeting that if Plaintiff could not find another major professor, Dr. Shanklin would intervene and have Dr. James Neill, the head of the Statistics Department, appoint her a major professor. Although the Court disregards that statement as hearsay, as noted below, the Court accepts the allegation that in practice, the Graduate School assisted Plaintiff with finding a major professor after Plaintiff's first grievance to remove Dr. Wang.

she needed a major professor to supervise her research. And Plaintiff knew that she could not

obtain a Ph.D. without having a major professor to supervise her dissertation research.

On April 9, 2012, Dr. Neill told Plaintiff that she was "free to find another professor

within the department with which to work," but "[i]n order to track your academic progress, you

will need to keep me informed as to which faculty is available and willing to supervise your

work." At a staff meeting on April 13, Dr. Neill and other Statistics Department faculty

discussed Plaintiff's situation and the Statistics Department policy that a dissertation topic was

relinquished to the major professor when a student did not make satisfactory progress. Then on

April 19, the Statistics Department Student Progress Committee ("SPC"), chaired by Dr. James

Higgins, met and determined that Plaintiff and one other student were not making sufficient

progress. Plaintiff was not informed of, nor present at the committee meeting. On April 20, the

committee reported its findings to Dr. Neill, that Plaintiff was not making adequate progress

because Plaintiff and Dr. Wang's relationship had become so contentious they could no longer

work together, such that Plaintiff no longer had a major professor and thus could not take the

preliminary examination and could not graduate.

Meanwhile, having heard nothing from Plaintiff since his April 9 email to her, on April

19, 2012, Dr. Neill emailed Plaintiff, again telling her that she needed to keep him informed

about her progress in obtaining a major professor, and giving her a deadline of April 27 to let

him know whether she had found another major professor, and if so, who. Plaintiff had

contacted all twelve Statistics Department faculty, by email or in person, seeking a major

professor. But Plaintiff did not report these efforts to Dr. Neill, until her April 23 email to Dr.

Neill. On that same date, Dr. Neill responded to Plaintiff's April 23 email, reminding Plaintiff of

8

the April 27 deadline.  Dr. Neill did not tell Plaintiff that failure to find a major professor by April 27 would lead to her dismissal from the graduate program.   Plaintiff never again communicated with Dr. Neill about her progress, either before or after the April 27 deadline.

Plaintiff was unable to find a faculty member in the Statistics Department to serve as her major professor.[18]  On April 30, 2012, Dr. Duane Crawford, an Associate Dean of the Graduate School emailed Plaintiff to inform her that he did not see any alternative to her starting her research anew on another topic with another major professor.  And on May 1, Dr. Guikema, also an Associate Dean of the Graduate School, emailed Plaintiff to inform her that her chances of completing her Ph.D. in statistics were "almost down to zero," and encouraging her to seek opportunities in other departments of the Graduate School.  In a May 2 email to Drs. Crawford and Guikema, Plaintiff wrote "I know some faculty members are not completely disinclined to be my major advisor . . . If the graduate school could step in to coordinate, I believe the result would be much different."  On that same date, Dr. Neill conveyed Plaintiff's lack of progress in an email to Heather Reed, Dean of Student Life, and Drs. Crawford and Guikema.  Dr. Neill wrote, "I know [Plaintiff] did not even have a conversation with one of our associate professors and did not follow up with another."  There was a consensus as early as May 2, that Plaintiff had exhausted her options for finding a major professor within the Statistics Department.[19]  At the same time, no one had advised Plaintiff that she must change research topics.  Dr. Neill wrote in

---

[18]The Court does not accept Plaintiff's allegations that certain professors declined to serve as her major professor out of fear that Dr. Neill or others did not want them to serve.  This allegation is based on hearsay, not admissible record evidence as is required at the summary judgment stage.

[19]Plaintiff attempts to controvert this, stating, "[A]nother faculty member, Dr. Song, told Plaintiff that he had the capability and interest in advising Plaintiff on Plaintiff's chosen research topic."  But this statement is inadmissible hearsay.  None of Plaintiff's materials provide admissible evidence that Dr. Song had the capability or interest in advising Plaintiff.

9

this same May 2 email to Reed, Crawford and Guikema that "my 4/9 & 19 mails simply indicated that she [Plaintiff] was free to locate another professor to supervise her research (this did not preclude a continuance of her previous work . . .)"

Sometime on May 2, 2012, Heather Reed received a report that Plaintiff had become extremely upset and disruptive in the Graduate School office and had to be escorted out of the building.[20] This triggered the University's Critical Incident Response Team ("CIRT") process. Later on May 2, Ms. Reed wrote to Dr. Crawford, "I had a long conversation with Jim [Neill] and we think a meeting to plan our response and her [Plaintiff's] separation from the university is prudent, considering her [Plaintiff's] erratic, aggressive behavior."

The CIRT, which is chaired by Ms. Reed, assesses and coordinates a response to situations presented on campus such as a student death or significant trauma, serious student situations involving medical or psychological concerns, or campus threats or emergencies that directly affect the well-being of students and the campus community. While Ms. Reed had a conversation with Dr. Neill to get background about Plaintiff's situation, Dr. Neill did not dictate any part of the CIRT process. After gathering information and meeting on May 4, the CIRT team concluded that Plaintiff did not appear to be dangerous, that she should be warned about her disruptive conduct, but that no disciplinary action was warranted. Although KSU has a process for expulsions or terminations for disciplinary reasons, such a process was never initiated to dismiss Plaintiff for disciplinary reasons. Dismissals for non-academic reasons, such as violation of the KSU Student Code of Conduct, Honor & Integrity violations, discrimination

---

[20]Plaintiff disputes that she was ever at the Graduate School office on May 2. The Court views the facts in the light most favorable to Plaintiff and accepts that she was not there; however, Plaintiff does not controvert the fact that Ms. Reed received this report of Plaintiff's behavior.

10

or sexual violence, or violations of the Threat Management Policy are not processed by the

Graduate School, but rather by other offices.  Failure to have a major professor is not listed in the

KSU Student Code of Conduct as a ground for discipline.

On May 7, 2012, Plaintiff met with Dr. Guikema and Heather Reed.  They told Plaintiff

that she would soon be dismissed from the Statistics Department for failing to obtain a major

professor and that she would be dismissed from the Graduate School unless she were accepted

into a different department in the Graduate School.  But  Plaintiff was unwilling to change topics

for her Ph.D. dissertation.  On May 7, Plaintiff received a follow-up email from Dr. Guikema

advising her that it was likely that the Graduate School would receive a recommendation from

the Statistics Department that Plaintiff be dismissed from the Graduate School for lack of

academic progress.

After securing permission from the Graduate School to proceed, on May 8, 2012, Dr.

Neill solicited the votes of the Statistics Department Student Progress Committee to determine

whether Plaintiff should be terminated from the Statistics Department.  The committee voted to

dismiss Plaintiff from the Statistics Department for failure to make academic progress.

As of May 9, 2012, Plaintiff had contacted every professor in the Statistics Department to

see if he or she would agree to serve as her major professor on her chosen topic; but none agreed

to serve.  Some claimed they already had too many students.   On May 9,  Dr. Neill wrote to the

Graduate School on behalf of the Statistics Department and recommended Plaintiff's termination

from the Statistics graduate program because she lacked a major professor:

> I have consulted with the Graduate Student Progress Committee in
> the Department of Statistics regarding the academic progress of
> [Plaintiff]. With no dissenting opinions, the committee and I are
> recommending that the student be terminated from the Statistics

11

> graduate program. This decision has been made based on her
> failure to find a replacement major professor to supervise her PhD
> research. Dr. Haiyan Wang served as major professor until the
> student filed a grievance with the objective of removing Dr. Wang.
> This request was approved by all concerned. [Plaintiff] has earned
> a MS in Statistics (2010) from the department, and I understand
> that she will have the opportunity to explore discussions with
> related graduate programs.

The Graduate School relies upon an academic department's recommendation regarding lack of academic progress and normally, the dismissal follows immediately upon the Graduate School's receipt of the recommendation. Neither Dr. Neill nor Dr. Guikema had ever been informed by anyone that the law required a formal hearing or any particular process before a recommendation could be made that a student be dismissed for failure to make academic progress.

On May 11, 2012, Dr. Guikema emailed Plaintiff a copy of the Statistics Department recommendation of dismissal from the Graduate School, and advised that he would not process the dismissal for one month "to allow you a 6 week window to find another program in which to be successful in your Ph.D. program." Later on May 11, Plaintiff responded by email, advising Dr. Guikema that she was shocked by the recommendation for dismissal, but grateful that Dr. Guikema and Dr. Shanklin were affording her a one- month grace period. Still later on May 11, Dr. Guikema responded by email, that

> The most important thing that you should do with this one month
> period is to keep you[r] eye on the prize—finding a graduate
> program in which you will be successful. It is never a good thing
> to hear bad news, no matter if it has been suggested to you before.
> Please keep me posted on your efforts and to whom you are
> talking. Again—this is confidential information and I will not be
> sharing any information with the people you contact. But I need to
> know that you are making progress. One month is not a lot of
> time. Best – jim.

12

Later on May 11, Dr. Guikema sent Plaintiff another email, reiterating that she should seek another graduate program, not in the Statistics Department:

> I have heard from several sources that you have been in contact with faculty members in the graduate program in Statistics. If you recall from the meeting that you and I had in the office of Heather Reed, it was decided that this approach would be a BAD IDEA. I reiterated that in a recent email.
>
> Further, I have been telling you for the past three weeks that my best advice is to contact people in other academic programs. That has not happened.
>
> Yet again you are showing that you cannot take advice.
>
> I am close to telling you that I can no longer serve as an advisor to you, since at every instance I get no positive action from you and, in fact, action which takes us back several steps.

On May 30, 2012, Plaintiff emailed Amanda Umscheid of the Graduate School stating that it was Plaintiff's "formal decision" not to transfer to another department of the Graduate School. As of May 31, Plaintiff had no major supervisor to supervise her dissertation research. Before May 31, Plaintiff had not asked any other department at KSU to accept her into its graduate program. On May 31, Dr. Guikema signed the letter dismissing Plaintiff from the Graduate School. In pertinent part the letter stated that the Graduate School was dismissing Plaintiff from graduate study at KSU, based on the Statistics Department's recommendation that Plaintiff be dismissed for failure to make satisfactory progress. During the entirety of her tenure at KSU, Plaintiff had been in good academic standing and had received several academic scholarships.

Plaintiff did not file a formal grievance regarding her dismissal between March 18 and May 31, 2012, nor after May 31, 2102. If Plaintiff had filed a formal grievance, Graduate

13

School procedures for academic dismissal, as detailed in the Graduate School Handbook, allowed for the filing of a grievance in response to proposed or final academic discipline. If the grievance cannot be resolved informally, the procedures allow the student to have a full hearing before an impartial committee, partially comprised of other graduate students, with opening and closing statements, submission of written documentation, calling witnesses, using a hearing advisor and a court reporter.

## III.  Discussion

Because Movants seek summary judgment on the basis of qualified immunity, the initial burden rests on the plaintiff to: (1) demonstrate that Movants violated her constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[21]  Plaintiff maintains that in dismissing her for failing to make satisfactory progress on the basis of her no longer having a major professor, Movants violated her right to procedural due process pursuant to 42 U.S.C. § 1983, by depriving her of her right to continued enrollment and graduate education,[22] and that such a right was clearly established at the time of her dismissal.

To succeed on a procedural due process claim, a plaintiff must prove two elements: first, that she possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and second that she was not "afforded an appropriate level

---

[21]*Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir.2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009)).

[22]The Court previously dismissed Plaintiff's claim in Count I that she was deprived of her liberty interest in her name and reputation.  Doc.21.

of process."[23]  The Court necessarily begins with the threshold question of whether Movants'

actions deprived Plaintiff of a property interest.  The parties disagree about the nature of the

property interest implicated by Movants' actions.  Plaintiff maintains that she has a property

interest in her continued enrollment and graduate education, while Movants characterize the

property interest as a much narrower interest in pursuing a particular dissertation research

topic.[24]  But Plaintiff's interest in continuing to pursue a particular dissertation topic was not

directly implicated by Movants' actions.  Indeed, despite the Statistics Department policy,

Plaintiff was allowed to continue with the same dissertation topic, assuming she could find a

sponsoring major professor.  And, Plaintiff was given the freedom to choose her own major

professor within the Statistics Department on or before April 27, and in other graduate programs

thereafter.

 When viewed in the light most favorable to Plaintiff, the uncontroverted facts support

characterizing the implicated property interest as the broader property interest Plaintiff claims, a

property interest in her continued graduate program.  And, the Supreme Court has held that once

provided,  public education becomes "a property interest which may be protected by the Due

Process Clause."[25]  Further, the Tenth Circuit has long recognized the property interest in a

graduate student's continued enrollment in a graduate program.[26]  Given that, Plaintiff's property

---

[23]*Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir.2005) (quotation omitted).

[24]*See Ndefru v. Sherwood*, No. 93-4127-SAC, 1993 WL 544563 (D. Kan. Dec. 29, 1993), *aff'd*, 30 F.3d 142 (table)(10th Cir. Aug. 4, 1994), *cert denied*, 513 U.S. 1128 (1995)(no constitutionally protected property interest in graduate student having his proposed dissertation topic approved).

[25]*Goss v. Lopez*, 419 U.S. 565, 574 (1975).

[26]*See Gossett v. Okla. ex rel Bd. of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001) (nursing student had a property right in his nursing education and was entitled to due process under the U.S. Constitution); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (graduate student had a property interest in his graduate

15

interest in her continued graduate program is a property interest protected by procedural due process.

To establish a violation of procedural due process and thus a violation of her constitutional rights, Plaintiff must next show that she was not afforded an appropriate level of procedural due process. For academic dismissals, the Supreme Court decision in *Board of Curators of University of Missouri v. Horowitz*,[27] clearly establishes the level of appropriate due process, as well as the importance of giving deference to the academic institution's evaluative decisions about its students. In *Horowitz*, a former medical student challenged her dismissal from the University of Missouri-Kansas City Medical School, claiming the school had not provided her procedural due process.[28] The student was dismissed during her final year of study for failure to meet academic standards.[29] Several faculty members opined that the student's clinical performance during a pediatrics rotation was below that of her peers. This led to two rounds of negative evaluations by the Council on Evaluation, a body of faculty and students that routinely and periodically evaluate all the performance of all students. The student's clinical performance was later evaluated by a group of well-regarded practicing physicians, who also gave her negative ratings. This led to the Council recommending her dismissal, a

---

education that entitled him to due process); *Byrnes v. Johnson Cnty. Cmty. Coll.*, No. 10-2690-EFM-DJW, 2011 WL 166715, at *1–2 (D. Kan. Jan. 19, 2011) ("Defendants argue that Plaintiff has no constitutionally protected property interest in her post-secondary education, but the law is clearly otherwise.").

[27]435 U.S. 78 (1978).

[28]*Id.*

[29]*Id.* at 79.

recommendation adopted by the Dean.  The student appealed this action to the Provost, who sustained the dismissal after reviewing the record.[30]

The Supreme Court held that the school provided sufficient due process in that it "fully informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment.  The ultimate decision to dismiss respondent was careful and deliberate."[31]  The Court also noted that there was no requirement that the school grant the student a hearing before dismissing the student on academic grounds; and that this level of protection for academic dismissals was consistent with sixty years of court decisions, including the Tenth Circuit's decision in *Gaspar v. Bruton*.[32]

Consistent with *Gaspar*, the Tenth Circuit more recently held in *Trotter v. Regents University of New Mexico*,[33] that a dismissed medical student was accorded due process where she was given prior notice of the faculty's dissatisfaction with her poor academic performance, and that although the student did not have a hearing, the number of appeals and review hearings conducted by the school, showed that the school's decision was careful and deliberate.[34]  In *Trotter*, the student had twice been expelled but reinstated, leading to a third dismissal that she challenged in the subject lawsuit.  The process accorded for that third dismissal included the

---

[30]*Id.* at 80–82.

[31]*Id.* at 84–85 (the Court assumed the student had a liberty interest in her continued enrollment; the student did not claim to have a property interest in such).

[32]*Id.* at 87–88 (citing *Gaspar v. Bruton*, 513 F.2d 843, 851 (10th Cir.1975) (holding that procedural due process was accorded when the school had advised the nursing student of her deficiencies and the failure or impending failure to meet standards)).

[33]219 F.3d 1179, 1185 (10th Cir.2000).

[34]*Id.*

medical school dean giving the student two-weeks notice that she was not meeting the conditions of her probationary reinstatement before expelling her for poor academic performance.  The dean's decision was reviewed and upheld by the university president, whose decision was reviewed and upheld by the university's board of regents.  The student did not participate in any hearing.[35]

Consistent with the instruction and directives in these Supreme Court and Tenth Circuit decisions, which were clearly established law at the time of Plaintiff's dismissal, this Court concludes that Plaintiff was accorded an appropriate level of due process.  Although she did not have a hearing, she was aware that she could not complete her dissertation work and graduate without the supervision of a major professor.  Drs. Neill and Guikema and others repeatedly reminded her of the critical need to obtain a major professor.  Dr. Neill communicated the urgency of this requirement by giving her a deadline after she failed to respond to his email asking her for updates.  When Plaintiff failed to communicate with Dr. Neill by the deadline or even thereafter, Dr. Neill and Guikema and others repeatedly told her that she needed a major professor and having failed to obtain one within the Statistics Department, she needed to seek such in another graduate program.  Plaintiff was given notice of the deficiency— lack of a major professor—and the consequence, dismissal from the Statistics Department— and dismissal from the Graduate School if she failed to obtain a major professor in another graduate program.  But Plaintiff refused the final option of seeking another graduate program, and failed to obtain a major professor in the Statistics Department before, or even after, the deadline.

---

[35]*Id.* at 1181–82.

Moreover, the process employed by the Statistics Department and Graduate School demonstrates that their decision to dismiss Plaintiff was careful and deliberate.  After the first grievance, Dr. Neill volunteered to serve as co-major professor with Dr. Wang, so Plaintiff could continue to work with Dr. Wang.  When Plaintiff sought removal of Dr. Wang through a second grievance, Dr. Neill, whose research area was different than Plaintiff's, directed Plaintiff to solicit a new major professor within the Statistics Department.  When Plaintiff failed to communicate with him or accomplish that, Dr. Neill and the other Statistics faculty met to discuss Plaintiff's situation.  Next, the Statistics Department SPC convened, not just to consider Plaintiff, but to consider the progress of other students, and determined that Plaintiff's lack of a major professor signified that she was not making satisfactory progress.  Dr. Neill was not involved in this committee; Dr. Higgins, the chair of the SPC reported the committee's finding to Dr. Neill on April 20.   From April 20 to April 27, Dr. Neill continued to encourage Plaintiff to seek another major professor in the Statistics Department.  After the April 27 deadline passed, Drs. Neill, Guikema and  Crawford began urging Plaintiff to seek another graduate program. But not until May 8, did Dr. Neill ask the SPC to make a formal decision; and on May 8, the SPC recommended Plaintiff's dismissal.  Dr. Neill then communicated the SPC's recommendation to the Graduate School; and two days later, Dr. Guikema gave Plaintiff notice of the recommendation and the impending dismissal, while also giving her a six week window to find another graduate program at KSU.  When Plaintiff advised the Graduate School on May 30 that she had decided not to transfer to another graduate program, only then, on May 31, was she dismissed from the Graduate School.  This process illustrates that Plaintiff's dismissal was the

19

produce of careful deliberation by the Statistics faculty, the SPC, and the Graduate School, and only after giving Plaintiff opportunities and alternatives to dismissal.

Moreover, for purposes of applying qualified immunity, the Court must conduct a differentiated analysis of each defendant, not just cumulatively, as the Court has discussed above.  In conducting a differentiated analysis, the Court asks whether Plaintiff can show facts or issues of fact concerning whether *each* defendant caused her to be subjected to a violation of her due process rights.[36]  A plaintiff must show that "clearly established law would advise reasonable decisionmakers that the [ ] process *and their role in it*" as alleged "transgressed clearly established constitutional rights."[37]  To make out a viable § 1983 claim and to overcome Movants' assertions of qualified immunity, Plaintiff "must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of [P]laintiff's clearly established constitutional rights."[38]

The uncontroverted facts show that Dr. Neill: (1) agreed to serve as co-major professor after Plaintiff's first grievance against Dr. Wang; (2) after the second grievance against Dr. Wang, removed himself as a co-major professor on a change form that Plaintiff signed and approved; (3) gave Plaintiff notice that to satisfactorily progress, she needed to find another major professor in the Statistics Department and gave her twenty-two days to do so; (4) continued to remind Plaintiff of her responsibility and the deadline to find another major

---

[36]*Pahls v. Thomas*, 718 F.3d 1210, 1231 (10th Cir. 2013) (citation omitted)..

[37]*See Riggins v. Goodman*, 572 F.3d 1101, 1115 (10th Cir. 2009) (citations omitted) (emphasis added).

[38]*Pahls*, 718 F.3d at 1228.

20

professor; (5) allowed Plaintiff to retain her same dissertation topic, despite the Statistics Department policy that provided that it be relinquished to Dr. Wang; (6) asked for a formal decision from the SPC Committee on May 8, eleven days after the deadline; and (7) recommended dismissal from the Statistics Department, based on the vote of the SPC. Dr. Neill never acted unilaterally. And, other than providing Ms. Reed with background information about Plaintiff's matriculation and status, Dr. Neill did not participate in the CIRT process that culminated in a finding of no disciplinary action.

The uncontroverted facts also show that Dr. Guikema: (1) followed Dr. Neill in expressly permitting Plaintiff to retain her dissertation topic with a new major professor; (2) informed Plaintiff on May 1, some four days after the April 27 deadline, that she needed to seek opportunities in other departments of the Graduate School, since she had almost no chance to continue with a major professor in the Statistics Department; (3) met with Plaintiff on May 7 to discuss her options given her imminent dismissal from the Statistics Department; (4) advised Plaintiff after the May 7 meeting that she would likely be terminated from the Graduate School because the Statistics Department was going to recommend termination; (5) on May 11 advised Plaintiff that the Statistics Department had recommended dismissal, but that the Graduate School would give Plaintiff six weeks to find another program to continue her Ph.D. matriculation, and further encouraged Plaintiff to keep him posted and assured her that this was confidential and that he would not share this information with anyone; and (6) warned her that he would no longer serve as her advisor if she continued to contact faculty in the Statistics Department instead of following his advice to seek a graduate program in another department. Dr. Guikema did not act unilaterally, but upon the recommendation of the Statistics Department, as is

21

standard. Dr. Guikema, like Dr. Neill, ignored the policy that dictated that Dr. Wang would

retain Plaintiff's research, adopting leniency in allowing Plaintiff to continue with that research

if she could find another major professor. Dr. Guikema further granted lenience and grace in

allowing Plaintiff six weeks after May 11 to continue to seek another major professor outside of

the Statistics Department. And, Dr. Guikema was not at all involved in the CIRT process.

        In short, while Plaintiff has established a constitutionally protected property interest in

her continued matriculation in graduate school, she has utterly failed her burden of showing that

either Defendant denied her procedural due process before her academic dismissal from

Graduate School. She was given repeated notice of the deficiency and its consequences, as well

as time to fix the deficiency. The dismissal was the product of careful deliberation by faculty,

the SPC and the Graduate School. As the Supreme Court instructed in *Horowitz*, the Court

necessarily gives deference to the academic decision makers in the institution and their "expert

evaluation of cumulative information" that is "not readily adapted to the procedural tools of

judicial or administrative decisionmaking,"as "[s]uch a judgment is by its nature more subjective

and evaluative than the type of typical factual questions presented in the average disciplinary

decision."[39]

        While Defendants accorded Plaintiff sufficient procedural due process under the clearly

established law, it bears noting, that Plaintiff could have filed a grievance at any time after she

was on notice of the need to obtain another major professor. She certainly could have filed a

grievance when she was placed on notice of the Statistics Department recommendation for

dismissal, or when she was given notice that the Graduate School would dismiss her, after a six

_____

[39]*Horowitz,* 435 U.S. at 90.

week grace period. Had Plaintiff filed a grievance, a process she was well aware of having previously filed two grievances against Dr. Wang, under KSU's procedures she may have received more process.[40]

Similarly, while doing nothing to institute or employ KSU's process to challenge disciplinary dismissals, Plaintiff now claims that her dismissal was for disciplinary, not academic reasons. Plaintiff characterizes her dismissal as behavioral, rather than academic, because according to Plaintiff, she had an excellent academic record. But her emphasis on her academic accomplishment misses the mark, for Plaintiff's lack of a major professor late in her Ph.D. candidacy prevented her from making the requisite academic progress.

Moreover, the Court rejects this argument because the uncontroverted facts show that the dismissal was academic, not disciplinary. Though the CIRT process was employed after the May 2 incident, it quickly terminated on May 4, with a finding that no disciplinary action was warranted. To be sure, Ms. Reed, who was involved in the CIRT process, emailed Dr. Crawford on May 2 and told him that she and Dr. Neill had discussed Plaintiff's separation from the university as prudent based on her erratic, aggressive behavior. But there is no evidence that Dr. Neill, Dr. Guikema, the SPC, or ultimately the Graduate School, proceeded with a process that resulted in Plaintiff's dismissal because of the May 2 incident. Rather, in every communication, including the formal recommendation and formal dismissal, Plaintiff's dismissal was premised

---

[40] Although there is no showing that KSU failed to follow its own more formal grievance procedures, even with a such a showing, that would not change the Court's analysis that Plaintiff actually received sufficient procedural due process. *See Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1185 (10th Cir. 2000) (noting that even if the medical school failed to follow its own procedural protections and even if those protections were greater than what the student received, that failure would not give rise to a constitutional claim under the Fourteenth Amendment; rather the constitutional claim is based on whether the procedures actually provided accord sufficient procedural due process).

on her failure to satisfactorily progress academically, because she had no major professor to supervise her dissertation work.

Furthermore, even if this Court found that the dismissal on academic grounds was pretextual and the real basis was disciplinary, the Court would still conclude that Defendants had not violated Plaintiff's right to procedural due process before dismissal. Although academic decisions about a student are entitled to greater deference than disciplinary decisions and the procedural requirements for academic dismissals are less stringent than those for disciplinary actions,[41] even under the standards for disciplinary dismissals, Plaintiff was afforded sufficient procedural due process. For, with respect to disciplinary dismissals, the Supreme Court has instructed due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[42] Here, Plaintiff was repeatedly given oral and written notice that she needed to find another major professor, because she could not progress academically without one. Plaintiff does not deny that she lacked a major professor; and she does not deny that she needed one. Thus, even under the process necessary for a disciplinary dismissal, there was no need to proceed with explanations, or Plaintiff's presentation with her side of the story. And, with respect to the May 2 incident, it ended with a finding of no disciplinary action, in other words, no charges, such that there was no need for further process on that basis.

---

[41] *Horowitz*, 435 U.S. at 86.

[42] *Id.* (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)).

Finally, although Plaintiff's behavior on May 2 may have been considered by Dr. Neill, and perhaps others, there is no indication that the SPC or Graduate School considered the incident. But even if the May 2 incident was considered by the decision makers, that does not transform an academic process into a disciplinary process. In *Horowitz*, the faculty determined that the student's clinical performance was unsatisfactory, and part of their evaluation concerned her lack of "critical concern for personal hygiene,"[43] a behavior not directly related to her academic performance. Yet, the process was still deemed an academic, not disciplinary process.

## IV.    Conclusion

Given that Defendants have raised qualified immunity, as discussed above, the burden is initially on Plaintiff to show that these defendants have violated her constitutional rights by depriving her of procedural due process. Plaintiff has failed her burden of demonstrating this. Defendants afforded Plaintiff more than the required level of due process for an academic dismissal, or even a disciplinary dismissal, based on the clearly established law at the time of her dismissal. Thus, Plaintiff has failed to meet her initial burden, and Defendants Neill and Guikema are entitled to qualified immunity and judgment as a matter of law.

Even if Plaintiff met her burden, however, and the burden shifted to Defendants to demonstrate their entitlement to judgment as a matter of law pursuant to Rule 56, Defendants have met that burden. Based on the uncontroverted facts detailed above, Defendants easily establish that they are entitled to judgment because they did not deprive Plaintiff of her constitutional right to procedural due process, and thus did not violate 42 U.S.C. § 1983.

---

[43]*Id.* at 81.

25

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Neill and Guikema's Motion for Summary Judgment (Doc. 67) is **GRANTED**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File a Surreply Memorandum (Doc. 77) is **GRANTED**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion to Strike Surreply (Doc. 78) is **DENIED**.

**IT IS SO ORDERED**.

Dated: July 23, 2015

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

GRACE LEE

                         Plaintiff,

v.

DR. CAROL W. SHANKLIN, et al

                         Defendants,

CIVIL ACTION

No. 12-2638-JAR

---

## <u>JUDGMENT</u>

This action came before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED BY THE COURT** that pursuant to the Memorandum and Order filed and entered on July 23, 2015 (Doc. 81), Defendants Neil and Guikema's Motion for Summary Judgment (Doc. 67) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Surreply Memorandum is (Doc. 77) is **GRANTED.**

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion to Strike Surreply (Doc. 78) is **DENIED.**

IT IS SO ORDERED.

Dated:  July 23, 2015.

s/ Bonnie Wiest
By Deputy Clerk
TIMOTHY M. O'BRIEN
Clerk of the District Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **GRACE LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  12-CV-2638-JAR-TJJ** |
| | ) | |
| **DR. JAMES A. GUIKEMA and,** | ) | |
| **DR. JAMES W. NEILL,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Grace Lee, Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Memorandum and Order (Court Doc. 81) granting Defendants' Motion for Summary Judgment entered on July 23, 2015.

Respectfully submitted,

By:    <u>/s/ Grace Lee</u>
Grace Lee, *Pro Se*
198 Mt. Vernon St., S1
Malden, MA 02148
785-340-3340
GraceLee695@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of August, 2015, I electronically filed the foregoing

PLAINTIFF'S NOTICE OF APPEAL with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to all counsel of record in this matter.


By:     <u>/s/ Grace Lee</u>
Grace Lee, *Pro Se*
198 Mt. Vernon St., S1
Malden, MA 02148
785-340-3340
GraceLee695@gmail.com